IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JOHN DAVID DRENTLAW<br>and LESLIE ANN DRENTLAW, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 180074N |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appeal Defendant's Notice of Assessment, dated October 17, 2017, issued for the 2013 tax year. Plaintiffs also challenged Defendant's letter, dated February 23, 2018, requesting that Plaintiffs file amended returns for the 2014 and 2015 tax years and warning that failure to do so would result in Defendant opening audits for those tax years. Defendant moved to dismiss Plaintiffs appeal of the 2014 and 2015 tax years because Defendant had taken no appealable actions for those tax years. In an Order entered June 25, 2018, the court granted Defendant's motion to dismiss the 2014 and 2015 tax years. That Order is hereby incorporated in this Decision by reference.

A trial on the 2013 tax year was held in the Oregon Tax Courtroom on July 23, 2018, in Salem, Oregon. John David Drentlaw (John) appeared and testified on behalf of Plaintiffs.[2] Nicholas Odom (Odom) appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 to 22 and Defendant's Exhibits A to H were received without objection. Following trial, the court

---

[1] This Final Decision incorporates without change the court's Decision, entered January 24, 2019. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Ordinarily the court refers to individuals by their last names. However, two witnesses share the same last name, Drentlaw, so the court will use their first names.

left the record open until September 5, 2018, for the parties to discuss resolution of John's claimed home office deduction. Plaintiffs requested an extension of time to pursue resolution of John's claimed home office deduction. The court entered an Order on October 2, 2018, granting Plaintiffs' request and allowing the parties until November 1, 2018, to resolve the issue. On October 19, 2018, Plaintiffs filed Exhibit 23, a letter from Turner and Townsend (T & T). On October 31, 2018, Defendant filed a status report maintaining that John should not be allowed a home office deduction. Plaintiffs requested another extension to obtain another letter from T & T. The court denied Plaintiffs' third request for an extension in a letter dated December 10, 2018.

## I. STATEMENT OF FACTS

On their 2013 Schedule A, Plaintiffs claimed itemized deductions totaling $29,598, including unreimbursed employee expenses totaling $19,134. (Ptfs' Ex 16 at 1.) Leslie claimed expenses of $9,660, composed of $5,041 for mileage and $4,619 for other business expenses. (*Id.* at 4.) John claimed expenses of $9,474, composed of $2,126 for mileage; $893 for travel; $6,257 for other business expenses; and $198 for meals and entertainment (M and E) after the 50 percent reduction. (*Id.* at 5.) On his 2013 Schedule C for JLD, LLC (JLD) John reported no income and $627 in expenses, composed of $210 for office expenses and $417 for other expenses, which were the LLC registration. (Ptfs' Ex 16 at 2-3.)

Following an audit of Plaintiffs' Schedule A itemized deductions, Defendant allowed $14,513 of the original $29,538 claimed. (Def's Ex A at 2.) Defendant increased Leslie's allowed mileage deduction from $5,041 to $7,105 and disallowed her other business expenses of $4,619. (*Id.* at 3, 5, 8.) Defendant disallowed John's mileage, travel, M and E, and other business expenses. (*Id.* at 3-8.) Additionally, Defendant increased Leslie's employer reimbursements to $3,056. (*Id.* at 7-8.) Although

///

Defendant did not adjust John's Schedule C, it noted that John intermingled his employee business expenses with his Schedule C business expenses. (*Id.* at 8.)

A.    *John's Employee Business Expenses*

John was employed as a Senior Consultant by T & T from February 21, 2012, to July 15, 2014. (*See* Ptfs' Ex 23.) He testified that he performed work for T & T from his home office because T & T had no office in Oregon in 2013. John testified that T & T was trying to establish a presence in Oregon in 2013, so T & T used John's address as its Oregon location. (*See* Ptfs' Ex 7 (web search result).) He testified that he had an agreement with a Senior Vice President of T & T that he could work in the Portland area and try to establish an office but could not receive reimbursement. A letter from T & T states that John "worked remotely and commuted to the client site as required. Our company did not reimburse him for any home office expenses." (Ptfs' Ex 23.) Defendant maintains that John should not be allowed a home office deduction because he failed to establish that the home office was for the convenience of T & T, rather than for John's convenience. (Def's Second Post Tr Status Report, Oct 31, 2018.)

John's home office was 187 square feet within a house totaling 2,921 square feet of finished, usable space. (Ptfs' Ex 5 at 23 (diagram of house received from Clackamas County).) John claimed a home office deduction of $2,683 based on the following home expenses:

| Expense | Amount (Total) | Exhibits |
|---|---|---|
| Electric (PGE) | $1,988 | Ptfs' Exs 14, 20 |
| Gas (NW Natural) | $968 | Ptfs' Exs 14, 20 |
| Sewer and Water (Lake Oswego) | $2,140 | Ptfs' Exs 1, 14, 20 |
| Lawn (Jose Velasco) | $1,820 | Ptfs' Exs 14, 20 |
| Rent | $30,000 | Ptfs' Exs 5, 20 |
| Insurance (Allstate) | $240 | Ptfs' Exs 14, 20 |
| Garbage (Republic Services) | $919 | Ptfs' Exs 3, 14, 20 |
| Phones (AT&T) | $2,272 | Ptfs' Exs 14, 15, 20 |
| Internet (Xfinity/Comcast) | $1,567 | Ptfs' Ex 2 (user policies), 14, 20 |
| Total | $41,914 | Ptfs' Ex 20 |

With respect to the internet expenses paid to Xfinity/Comcast, John testified that the business package included no breakdown of services (internet, television, etc.), so he used the square footage allocation for his office to allocate to business use.

John provided a spreadsheet entitled "Deductions Claimed," listing "total office expense both JLD & T&T" of $9,350. (Ptfs' Ex 22 at 1.) That figure includes parking totaling $891; "membership & training/conf." of $729; postage of $192; office supplies of $1,622; M and E of $2,259; Portland office rent of $2,550; car rental of $536; and subscriptions of $571. (*Id.*) John testified that he traveled to Manhattan, Houston, San Francisco, Long Beach, and other locations for T & T. He testified that, for instance, he performed the initial cost consulting on Time Warner's office construction in New York. John testified that his claimed M and E expenses were to entertain clients on behalf of T &T. (*See, e.g.,* Ptfs' Ex 14 at 9, 11.) He relied on email records as well as bank and credit card statements showing travel. (*See* Ptfs' Ex 15 at 4.)

T & T had a reimbursement policy in effect for its employees in 2013 and, as an employee, John had a right to receive reimbursement for expenses including travel, personal car usage, and M and E. (*See* Ptfs' Ex 9.) The policy covered "expenditure of company funds within your home office, on a business trip or short and long term domestic assignments." (*Id.* at 3.) John testified that, in 2013, he submitted claims for reimbursement monthly and received reimbursements totaling $4,447. He was unable to provide specific evidence of reimbursed items because he submitted claims through T & T's computer system and he no longer works for T & T. John testified that T & T did not reimburse his personal car or home office expenses. Although John claimed mileage on his Schedule A, he testified that his personal car mileage was primarily, though not exclusively, associated with his sole proprietorship, JLD, discussed below.

/ / /

B.    *John's Sole Proprietor Expenses*

John testified that he also operated a construction consulting business, JLD, as a sole proprietorship. He described JLD's business as "fixed capital management" and "construction white papers." JLD was formed on September 26, 2011. (*See* Ptfs' Ex 4 at 1.) John testified that he performed work for JLD both out of his home office and out of a "virtual office" he rented in downtown Portland. He testified that he paid $400 per month to Foundation Real Estate Development to rent the virtual office for six months in 2013. (*See* Ptfs' Ex 14 at 97; Ex 19; Ex 4[3].) Although he did not provide a lease for the virtual office, John's bank statements list payments of $400 to Foundation Real Estate Development on 8/02/13; 8/26/13; 9/25/13; and 10/25/13. (Ptfs' Ex 14 at 86, 97, 109, 119.) John did not report rent expenses on his Schedule C.

John testified that he incurred mileage and parking expenses associated with traveling to the virtual office from his home office. He did not provide a mileage log, only bank and credit card statements detailing parking expenses. (*See* Ptfs' Exs 13-15.) John reported total parking expenses of $891. (Ptfs' Ex 22 at 1.) He did not claim any mileage or parking expenses on his Schedule C, although he claimed such expenses on Schedule A.

John testified that he ended his employment with T & T around July 2014 and focused only on JLD. (*See also* Ptfs' Ex 23.)

C.    *Leslie's Employee Business Expenses*

During trial, parties stipulated that Leslie is allowed a mileage deduction of $5,420 for the 2013 tax year.[4] The parties further stipulated that Leslie is entitled to a home office deduction based on a 400-square-foot home office, which is 14 percent of Plaintiffs' total home.

---

[3] John noted that the address for Foundation Real Estate Development, Inc. matches the business address JLD: 510 SW 5th Ave Ste 400.

[4] The mileage deduction takes into account employer's reimbursements.

The parties agreed that Leslie's home office deduction includes 14 percent of electric, gas, sewer and water, garbage, rent, and insurance. Plaintiffs conceded that Leslie's home office deduction does not include any portion of lawn or phone expenses. They disagreed whether her home office deduction includes internet expenses. Defendant agreed that Plaintiffs substantiated the amount paid for internet but disagreed that it was deductible because Plaintiffs presented no evidence to support an allocation to business use. (*See* Ptfs' Exs 2, 14, 20 (Xfinity/Comcast payments).)

D.      *Defendant's Position*

Odom testified that his two primary concerns with John's claimed deductions are: (1) determining which expenses pertain to T & T and which to JLD; and (2) substantiation. He found inadequate substantiation to differentiate between T & T employee expenses and JLD sole proprietor expenses. (*See* Def's Ex E at 4.) Odom testified that John failed to meet the strict substantiation requirements with respect to mileage, travel, and M and E. With respect to the virtual office in Portland, Odom agreed it should be an allowable deduction, but noted that John did not provide a lease agreement. Odom did not adjust any Schedule C expenses.

## II.  ANALYSIS

The issues presented for the 2013 tax year are (1) whether John is allowed any deduction for unreimbursed employee business expenses; (2) whether John is allowed any additional deduction for business expenses associated with his sole proprietorship; and (3) whether Leslie is allowed as an unreimbursed employee business expense the cost of internet expenses associated with her home office.

The Oregon legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of

taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[5] In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *." ORS 316.012. On the issue of employee business expenses, "Oregon law makes no adjustments to the rules under the [IRC] and therefore, federal law governs the analysis." *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253 (2002), 2002 WL 236685 at *2 (US Tax Ct) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise allowed under the IRC.

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488 (2001), 2001 WL 332038 at *2 (US Tax Ct) (requiring taxpayers "to maintain records sufficient to substantiate their claimed deductions").

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of the allowable amount.

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

*Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A). *See also* Treas Reg § 1.274-5T(a). Taxpayers must substantiate each element of such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement * * *." IRC § 274(d).

> "To meet the 'adequate records' requirements of [IRC] section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *."

Treas Reg § 1.274-5T(c)(2)(i). "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility * * *." Treas Reg § 1.274-5T(c)(1).

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department * * *" ORS 305.575.

A.   *John's Employee Business Expenses*

1.   *Home office*

Generally, no deduction is allowed with respect to the use of a dwelling unit that is used by the taxpayer as a residence.  IRC § 280A(a).  However, a deduction may be taken for "any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis * * * as the principal place of business for any trade or business of the taxpayer[.]"  IRC § 280A(c)(1)(A).[6]  In the case of an employee, the deduction is allowed only if the use "is for the convenience of his employer."  IRC § 280A(c)(1).

> "[T]he term 'principal place of business' includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business."

*Id.*  "The legislative history of section 280A * * * makes it clear that [it] was intended to prohibit a deduction for the expense of a home office which was merely appropriate and helpful to a taxpayer in his trade or business."  *Dudley v. Comm'r*, 54 TCM (CCH) 1288 (1987), 1987 WL 27098 (US Tax Ct).

John maintained a home office because T & T had no office in Oregon but was seeking to establish a presence in Oregon.  T & T confirmed that John worked remotely and received no reimbursement for his home office expenses.  The court is convinced that John's home office was his principal place of business for T & T because there was no other fixed location where John conducted business activities on behalf of T & T.  The court is further convinced that he

---

[6] The fact that John used his home office for both T & T and JLD does not violate the "exclusive use" requirement so long as each use qualifies under IRC section 280(c).  *See Hamacher v. Comm'r*, 94 TC 348, 356 (1990) (concluding "that expenses attributable to the use of a home office in conducting two or more separate business activities may be deductible").)

was not reimbursed for the expense of maintaining a home office. The question is whether John maintained a home office for the convenience of T & T or for his own convenience.

An employee's home office is for the convenience of the employer when maintenance of the office is a condition of employment, "when the home office [is] necessary for the functioning of the employer's business," or when the office is "necessary to allow the employee to perform his duties properly." *Hamacher v. Comm'r*, 94 TC 348, 358 (1990) (citations omitted). A home office maintained purely for the "personal convenience, comfort, or economy" of the employee does not qualify. *Id.* (citations omitted). Where the employer provided the employee with a suitable office available at all times, the court concluded the employee's home office was for his own convenience. *Id.* at 359; *see also Tokh v. Comm'r*, 25 Fed Appx 440, 442 (7th Cir 2001) (employer provided "unlimited access to its downtown office"). Even when the employer provides inadequate work space for the employee, that fact "is not dispositive of whether a home office is for the convenience of the employer." *Christine v. Comm'r*, TC Mem 2010-144, WL 2640125 at **10-11 (2010), citing *Dudley*, 1987 WL 27098.[7]

The court is convinced that John's home office was maintained for the benefit of T & T, rather than merely for his own convenience. Although the letter from T & T does not clearly resolve the question, other evidence supports that finding. First, John testified that T & T maintains no office in Oregon, so there was no other location where he could perform work on behalf of T & T. That fact is in contrast with the cases discussed above, each involving employees who maintained at least two offices, one provided by the employer and a home office.

---

[7] In *Christine*, the taxpayer was a newspaper writer whose employer "provided him with a desk and chair; but a few years later he came into the office to find his chair was missing." WL 2640125 at **10-11. The taxpayer explained that the newspaper did not provide adequate office space for all its journalists to work in the office at the same time. *Id.* In *Dudley*, the taxpayer was a college professor whose employer provided him with options (the college library, a teacher's lounge, and an office share) to perform his job duties on campus. 1987 WL 27098.

Second, John testified that T & T was seeking to establish a presence in Oregon and used John's home address as its Oregon location. That fact indicates that T & T found it useful for John to work from his Oregon home office. The court found John's testimony to be credible. No evidence was presented to rebut his testimony. Accordingly, John is allowed a home office deduction on his Schedule A based on a 187-square foot office. The amount of the deduction shall be calculated based upon the same expenses allowed for Leslie's home office.

2.      *Other employee business expenses*

John originally claimed employee business expenses of $9,474 for mileage, travel, M and E, and other business expenses. Based on John's testimony, most of his mileage and parking expenses, as well as expenses to rent the Portland office, were attributable to JLD. Excluding those expenses associated with JLD and John's home office expenses, John's remaining business expenses totaled $5,909 ("membership & training/conf.," postage, office supplies, M and E, car rental, and subscriptions). Some amount of that total may also be attributable to JLD.

"[A]n expense is not 'necessary' under § 162(a) when an employee fails to claim reimbursement for the expenses, incurred in the course of his employment, when entitled to do so." *Orvis v. Comm'r*, 788 F2d 1406, 1408 (9th Cir 1986) (citations omitted). Expenses for which the employee may receive reimbursement – even if the employee does not, in fact, receive reimbursement – are the employer's expenses and may not be deducted by the employee. *See Worth v. Comm'r*, 20 TCM (CCH) 216 (1961). John's employer, T & T, had a reimbursement policy in effect in 2013 covering travel expenses, personal car usage, client entertainment, and more. John received reimbursements totaling $4,447, although it is unclear which items were reimbursed. The court is convinced that John was reimbursed by T & T — or had a right to reimbursement — for his employee business expenses, excluding the home office. Furthermore,

John's proffered evidence to support his business expenses was lacking. For instance, he claimed an office supply expense of $1,622, but provided only bank and credit card statements showing expenditures at office stores such as Office Depot. (*See* Ptfs' Ex 15 at 7-8.) It is not possible to determine from those statements the items purchased or their connection to John's work for T & T. No further deduction for employee business expenses is allowed.

B.       *John's Sole Proprietor Expenses*

Although John reported only $627 in expenses associated with JLD on his 2013 Schedule C, his testimony revealed that some of the expenses reported on his Schedule A (associated with T & T) should have been attributed to JLD. Specifically, rent paid for a "virtual office" in downtown Portland and transportation expenses (mileage and parking) associated with travel between his home office and the downtown Portland office.

John's bank statements reveal payments totaling $1,600 to Foundation Real Estate Development, which was the Portland office he rented. John testified that he paid $400 per month for six months, but no payments appeared in his bank statements in November or December 2013. The court is convinced that John paid at least $1,600 to rent an office in Portland in 2013 and will allow an additional Schedule C deduction in that amount.

John's personal automobile is listed property under IRC section 280F(d)(4)(A)(i) and is, therefore, subject to the strict substantiation requirements of IRC section 274(d). John failed to provide a mileage log or other record supporting his claimed business use of the automobile, so the court cannot determine the amount of his business use. Similarly, the court cannot discern from John's credit card statements which parking expenses were incurred for business purposes and which were incurred for personal purposes. *See Striefel v. Comm'r*, 105 TCM (CCH) 1621, WL 1501529 at *4 (2013) (concluding that the taxpayer's bank statements alone did not

substantiate taxpayer's vehicle expenses because they did not demonstrate what the taxpayer "actually purchased at these establishments and to what extent these purchases had a business purpose"). Accordingly, no mileage or parking deduction is allowed for the 2013 tax year.

C.   *Leslie's Employee Business Expenses – Internet*

The parties were unable to agree whether Plaintiffs provided sufficient evidence to support internet expenses as part of Leslie's home office deduction. Plaintiffs reported payments to Xfinity/Comcast totaling $1,567 and provided user policies. They failed to provide evidence breaking down the payments based on services received (television, internet, etc.) and they failed to submit evidence from which the court can determine the amounts of business and personal usage of the internet. No further home office deduction is supported.

## III.  CONCLUSION

Upon careful consideration, the court concludes that, for the 2013 tax year, Plaintiffs are allowed Schedule A deductions for John's home office and Leslie's home office, as well as a deduction of $5,420 for Leslie's mileage. The home office deductions shall be calculated based upon Plaintiffs' electric, gas, sewer and water, garbage, rent, and insurance expenses. No additional Schedule A deductions are allowed. The court further concludes that, for the 2013 tax year, Plaintiffs are allowed an additional Schedule C deduction of $1,600 for John's Portland office rent. Now, therefore,

IT IS THE DECISION OF THIS COURT that for the 2013 tax year, Plaintiffs are allowed additional Schedule A deductions for John's home office and Leslie's home office, as well as a deduction of $5,420 for Leslie's mileage. The home office deductions shall be calculated based upon Plaintiffs' electric, gas, sewer and water, garbage, rent, and insurance expenses. No additional Schedule A deductions are allowed.

IT IS FURTHER DECIDED that, for the 2013 tax year, Plaintiffs are allowed an additional Schedule C deduction of $1,600 for John's Portland office rent.

IT IS FURTHER DECIDED that Plaintiffs' 2014 and 2015 tax year appeals are dismissed.

Dated this ___ day of February 2019.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on February 12, 2019.*